COASTAL DISTRIBUTING COMPANY, INC., Plaintiff-Appellant,

v.

NGK SPARK PLUG CO., LTD., and NGK Spark Plugs [U.S.A.], Inc., Defendants-Appellees.

No. 84–2368.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1986.

Susman, Godfrey & McGowan, Stephen D. Susman, Evelyn Jo Wilson, Houston, Tex., for plaintiff-appellant.

Fulbright & Jaworski, Layne E. Kruse, Rufus Wallingford, Houston, Tex., for defendant-appellees.

George J. Delaney, Houston, Tex., for other interested parties.

Before GARZA, POLITZ, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge.

Coastal Distributing Company, Inc., (Coastal) appeals from the adverse entry of judgment by the district court in its suit against NGK Spark Plugs (U.S.A.), Inc., (NGK–USA) and NGK Spark Plug Company, Ltd., (NGK, Ltd.) (collectively referred to as NGK).[1] Because the district court properly applied the correct statute of limitations to bar Coastal's claims of fraud and unfair competition, and because the district court properly applied the jury finding of illegality to bar enforcement of the oral contract, we affirm the judgment in favor of NGK.

## I. FACTS AND PROCEDURAL HISTORY

NGK has sold spark plugs in the United States since the 1960's through a network of distributors. One of its early distributors was Coastal, a Louisiana corporation with its place of business in New Orleans. Coastal's president and sole shareholder was Wayne Ryon. By 1972 NGK had contracted with approximately ten distributors.

Under the terms of Coastal's first distributorship agreement in 1972, NGK granted Coastal the exclusive right to promote NGK spark plugs in Louisiana and Arkansas. Other NGK distributors elsewhere signed similar agreements, thus dividing up the country into several exclusive territories. Thereafter, Coastal signed yearly agreements with NGK.

In 1976 Coastal signed a distributorship agreement with NGK which significantly differed from prior agreements. The restriction on NGK to refrain from appointing new distributors in Coastal's area was deleted. A similar agreement was signed for 1977, and it continued in effect from 1977 to 1982 without formal renewal. In

1982 Coastal signed another agreement which also had no provision for exclusivity.

A short time before NGK decided to delete the exclusivity provisions of the distributorship agreements, NGK also established a rebate system for its distributors. NGK rebated a few cents for each spark plug sold by a distributor to qualifying companies. Before NGK would pay the rebates, it required proof of sales by the submission of invoices which included information about each distributor's customers. Coastal provided NGK with such information and received rebates.

By 1978 NGK had decided to expand its distribution program by selling directly to its distributors' customers. NGK used information obtained from its rebate program to determine who these new distributors should be. In the fall of 1978 NGK began signing up new distributors, the first being a wholesale distributor in Oregon.

In January 1979 Ryon met with Shozo Uemachi, president of NGK–USA. According to Ryon, Uemachi told Ryon that he would never sell to any of Ryon's customers. Uemachi's version of the meeting was that no such promise was made. NGK in 1979 began signing direct distribution agreements with Coastal's larger customers, and many more were signed up later. In December 1979 Ryon accepted NGK's offer of a consulting position with NGK, but this agreement expressly stated that it did not alter any prior commitments between Ryon and NGK.

On June 3, 1981, Coastal filed suit against NGK. Although Coastal later abandoned its various antitrust claims, it proceeded on the common law counts of fraud, unfair competition, and breach of contract. NGK raised several defensive issues, including the statute of limitations for fraud and unfair competition, waiver of fraud, and illegality of the oral contract. The case was submitted to the jury on special issues.

---

1. Coastal did not seek jury findings against NGK, Ltd., the Japanese parent, and the district court accordingly dismissed this entity from the suit.

The jury found that NGK had fraudulently represented to Coastal that it would never sell directly to Coastal's customers and that Coastal relied on such representations by delivering its customer information to NGK and by selling NGK's as its only brand of spark plug. The jury also found that NGK had orally contracted with Coastal, under the terms of which NGK agreed never to sell directly to Coastal's customers. Moreover, the jury found that the customer information Coastal supplied to NGK constituted trade secrets and that NGK had engaged in unfair competition by wrongfully using this information to injure Coastal.

However, the jury answered several defensive issues favorably to NGK. The jury found that Coastal waived the acts which constituted fraud, and that the oral agreement was an unreasonable restraint of trade. Furthermore, on statute of limitations issues, the jury found that Coastal was aware that NGK was going to sign up Coastal's customers prior to June 3, 1979, which was two years before suit was filed.

The district court found that the jury's answers to the defensive issues were dispositive of Coastal's claims and entered judgment in favor of NGK. Coastal now appeals.

## II. UNFAIR COMPETITION AND FRAUD

Coastal now[2] claims the district court erred in holding that its causes of action for unfair competition and fraud had accrued by the time it became aware that NGK was going to sign up its customers. Coastal further asserts that the district court erred in applying the two-year statute of limitations to bar recovery on these

two claims rather than the four-year statute of limitations. The parties do not challenge the district court's determination that Texas law controls regarding the limitations issues although California provides the substantive law of the state-based claims.[3] *See Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

### A. *Accrual of the Causes of Action.*

Because the district court applied a two-year statute of limitations to the claims for fraud and unfair competition, the jury finding that Coastal was aware two years before filing suit of NGK's intentions to sign up Coastal's customers will bar these claims if this awareness marked the accrual of these causes of action. *See* Tex.Rev. Civ.Stat.Ann. art. 5526 (Vernon Supp.1985).

Coastal argues that its unfair competition claim, based on NGK's wrongful acquisition and use of its customer information, did not accrue until damage resulted to Coastal. Coastal claims that its cause of action instead accrued when NGK "caused legal injury" to Coastal by signing up Coastal's customers beginning in late 1979. Thus, Coastal argues, its unfair competition claim is not barred by even a two-year statute of limitations.

A leading Texas case has summarized the accrual determination:

The general rule is that a cause of action sounding in tort accrues, in the absence of a statute to the contrary or fraudulent concealment, when the tort is committed. This rule obtains notwithstanding the fact that the damages, or their extent,

**2.** NGK argues that Coastal waived these objections to the district court's instructions and submission of a special verdict because Coastal was silent concerning the limitations issues when the district court asked for oral or written objections. *See* Fed.R.Civ.P. 51. We pretermit the question of whether Coastal has preserved these objections. Even had Coastal failed to so object, the district court's *application* of the jury finding on limitations is still open to challenge on appeal.

**3.** Counsel for Coastal at oral argument suggested that California law, which the district court applied as the substantive law of the common law claims, also governed the accrual issues. However, she later conceded that accrual is usually important only in limitations contexts, and Coastal has cited no California authorities on this issue.

are not ascertainable until a later date.... A legal injury must be sustained, of course, before a cause of action arises.

*Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967) (citations omitted). The *Atkins* court approved the following test from 54 C.J.S. *Limitations of Actions* § 168 (1948) (footnotes omitted):

The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the act is of itself not unlawful in this sense, and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained; and this is true although at the time the act is done it is apparent that injury will inevitably result.

If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not ascertainable at the time of the wrong done, for in such a case the subsequent increase in the damages resulting gives no new cause of action. A fortiori, where the doing of an act is attended immediately by resulting actual damage, the statute begins to run at once.

*Id.*

A Texas court has more recently clarified the importance of the time when the breach of duty or wrongful act occurred:

As a general rule, the statute of limitations commences to run upon a cause of action in tort from the time that the duty owing to the plaintiff was breached by the wrongful or negligent acts of the defendant, even though, in some cases, the plaintiff is ignorant of the existence of his cause of action, or although damage was not sustained until after the commission of the tort. A cause of action ordinarily arises, and the statute of limitations commences to run, immediately upon the commission of the wrong about which the complaint is made, and the running of the statute is not postponed until damage results from the wrong.

*Dotson v. Alamo Funeral Home,* 577 S.W.2d 308, 311 (Tex.Civ.App.—San Antonio 1979, no writ) (citation omitted). See also *Fusco v. Johns-Manville Products Corp.,* 643 F.2d 1181, 1183 (5th Cir.1981) (interpreting Texas law).

■ The district court held, and we agree, that the accrual date for Coastal's unfair competition claim runs from NGK's wrongful use of Coastal's customer information rather than the date that NGK began to sign up Coastal's customers.[4] NGK committed a wrongful act, and a legal injury occurred, when NGK wrongfully acquired and used information given it by Coastal. The original acquisition, made under a fraudulent scheme to take Coastal's customers, was a wrongful act and NGK's use of that confidential information contrary to Coastal's purposes was similarly wrongful. Coastal need not have waited for damages to be ascertainable in terms of lost sales. At the least, Coastal could have prevented further wrongful use of the customer information by seeking injunctive relief against NGK.

Coastal makes a similar argument concerning the fraud claim. According to Coastal, because an element of fraud is

---

**4.** While the jury found that Coastal was aware prior to June 3, 1979, that NGK was going to sign up its customers, the district court made it clear that wrongful use of the customer information also occurred prior to that date. We have determined the district court's finding to be supported by the evidence and not clearly erroneous.

damage, Coastal had no cause of action on this claim until NGK actually signed up its customers in late 1979 and in 1980. Coastal argues that the discovery rule, which triggers the running of the limitations period when the fraud is or should have been discovered, can extend the period for filing suit but can never shorten it.

Texas law on the accrual of a cause of action for fraud had been summarized as follows:

> [In an action for damages based upon fraud and deceit] the cause of action accrues at the time the fraud is perpetrated, unless it is concealed or is not known to the injured party, but in any case the statute of limitations begins to run from the time the fraud is discovered, or could have been discovered by the defrauded party by the exercise of reasonable diligence.

*Quinn v. Press*, 136 Tex. 60, 140 S.W.2d 438, 440 (1940). *See, also Glenn v. Steele*, 141 Tex. 565, 61 S.W.2d 810 (1933). The rule is sometimes phrased as "the statute would begin to run when plaintiff knew of the alleged wrongdoing or knew of facts sufficient to exercise such inquiry as would have been made in the exercise of reasonable diligence." *Ryan v. Collins*, 496 S.W. 2d 205, 211 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

We conclude that the fraud was perpetrated when Coastal, relying on the false representations of NGK, gave its confidential customer information to NGK and sold NGK spark plugs exclusively. The material, intentional false statements caused Coastal to give up something of value and to change its position in reliance on NGK's representations. *See, e.g., Stone v. Lawyers' Title Insurance Co.*, 554 S.W.2d 183, 185 (Tex.1977) (elements of actionable fraud). After Coastal discovered that NGK had misrepresented its intentions and was going to sign up NGK's customers, the cause of action accrued and the statute of limitations began to run.

### B. *Applicable Period of Limitations.*

There are three relevant Texas statutes of limitation. The two-year statute, Tex. Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958), previously applied to various torts as well as to "[a]ctions for debt where the indebtedness is not evidenced by a contract in writing." Article 5526 was amended, effective August 27, 1979, and has deleted the provision for actions for debt.[5] The

---

5. The new version of the two-year statute reads as follows:

> There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
> 1. Actions of trespass for injury done to the estate or the property of another.
> 2. Actions for detaining the personal property of another, and for converting such property to one's own use.
> 3. Actions for taking and carrying away the goods and chattels of another.
> 4. Action for injury done to the person of another.
> 5. Action for injury done to the person of another where death ensued from such injury; and the cause of action shall be considered as having accrued at the death of the party injured.
> 6. Actions of forcible entry and forcible detainer.

Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon Supp. 1985).

The prior version had provided:

> There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
> 1. Actions of trespass for injury done to the estate or the property of another.
> 2. Actions for detaining the personal property of another, and for converting such property to one's own use.
> 3. Actions for taking or carrying away the goods and chattels of another.
> 4. Actions for debt where the indebtedness is not evidenced by a contract in writing.
> 5. Actions upon stated or open accounts, other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents. In all accounts, except those between merchant and merchant, as aforesaid, their factors and agents, the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted.

four-year statute, Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon 1958), previously applied to "[a]ctions for debt where the indebtedness is evidenced by or founded upon any contract in writing." Article 5527 was also amended, effective August 27, 1979, and this passage was rewritten to "[a]ctions for debt." Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon Supp.1985). A four-year statute, Tex.Rev.Civ.Stat.Ann. art. 5529 (Vernon 1958), a residual provision, establishes a limitation period for actions not otherwise provided for.

■ Texas courts have long applied the two-year limitations period of article 5526 to actions based on fraud. *E.g., Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438 (1940); *Atomic Fuel Extraction Corp. v. Slick's Estate,* 386 S.W.2d 180, 191–92 (Tex.Civ. App.—San Antonio 1964, writ ref'd n.r.e.). However, Coastal argues that an action for fraud is an "action for debt" and that the amendment of articles 5526 and 5527 on August 27, 1979, just after the causes of action accrued in June 1979, which provided for a four-year limitation period for actions for debt, altered the statutory scheme to now include all actions for fraud under the four-year period of article 5527. We disagree.

Texas courts after the 1979 amendments have continued to apply the two-year period of article 5526 to actions based on fraud. *See Mooney v. Harlin,* 622 S.W.2d 83, 84 (Tex.1981) (citing *Quinn* and *Ryan v. Collins,* 496 S.W.2d 205, 210 (Tex.Civ.App.— Tyler 1973, writ ref'd n.r.e.)); *see also Hays v. McNeice,* 641 S.W.2d 695 (Tex.App. —Amarillo 1982, no writ); *Spellings v. Lawyers Title Insurance Corp.,* 644 S.W.2d 804 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). This Court, when applying Texas law, has acted similarly. *See Neeley v. Bankers Trust Co.,* 757 F.2d 621, 632 (5th Cir.1985); *Bauman v. Centex Corp.,* 611 F.2d 1115, 1118 (5th Cir.1980).

Coastal claims that actions for fraud previously were covered by article 5526 only because they were characterized as "actions for debt where the indebtedness is not evidenced by a contract in writing," the now-deleted portion of the two-year statute. We are unwilling to so construe the Texas statute in a manner contrary to the Texas courts' interpretation. Moreover, pre-1979 decision by Texas courts applied article 5526 even to fraud involving a *written* contract; this indicates that an action for fraud may not be an "action for debt" at all. *See Quinn,* 140 S.W.2d at 440; *Atomic Fuel,* 386 S.W.2d at 191–92.

Coastal next argues that the residual statute of limitations, article 5529, provides a four-year period of limitations for its unfair competition claim because no other statute applies. Alternately, Coastal claims that the amended article 5527 now provides a four-year period because unfair competition is actually an "action for debt." We disagree with both contentions.

The unfair competition claim, based on NGK's wrongful acquisition and use of Coastal's trade secrets, is a tort governed by the two-year limitations period of article 5526. Texas courts have previously applied the two-year limitation to the misappropriation of trade secrets. *See Reynolds-Southwestern Corp. v. Dresser Industries, Inc.,* 438 S.W.2d 135, 140 (Tex.Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.); *see also Crutcher-Rolfs-Cummings, Inc. v. Ballard,* 540 S.W.2d 380, 387 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). A federal court has likewise applied the two-year statute to a claim for breach of confidence based on a misuse of a trade secret. *See Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 150 F.Supp. 143, 160 (E.D.Tex. 1956), *aff'd,* 259 F.2d 398 (5th Cir.1958), *cert. denied,* 361 U.S. 903, 80 S.Ct. 210, 4 L.Ed.2d 158 (1959). Coastal has not per-

---

6. Action for injury done to the person of another.

7. Action for injury done to the person of another where death ensued from such injury; and the cause of action shall be considered as having accrued at the death of the party injured.

8. Actions of forcible entry and forcible detainer.

Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958).

suaded us that amendment of the statutes of limitation changes this result.[6]

## III. BREACH OF THE ORAL CONTRACT

■ A remaining claim is Coastal's breach of contract theory. The district court applied the finding of the jury, that this oral contract was an unreasonable restraint of trade, to bar recovery on this claim.[7] Coastal effectively concedes that an unlawful agreement that unreasonably restrains trade is unenforceable, whether unlawful under California (the substantive law of the case) or federal law. *See* Cal.Bus. & Prof.Code § 16600 (Deering 1976); *Kaiser Steel Corporation v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982).

■ Coastal also objects to the district court's instructions on unreasonable restraint of trade. It argues, first, that the jury was misinstructed as to the relevant market; second, that the instructions gave inadequate guidance as to what constitutes an unreasonable restraint of trade. The district court allowed both sides to object to the instructions, either in open court or in writing. Coastal's stated objection to the unreasonable restraint of trade instruction was, "We don't feel it [has] a substantial foundation in the evidence." Fed.R.Civ.P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." A party may not object to an instruction on one ground at trial and then attempt to rely on a different ground on appeal. *See Sinclair Refining Co. v. Howell*, 222 F.2d 637, 641 (5th Cir.1955); 9 C. Wright & A. Miller *Federal Practice and Procedure* § 2554 (1971).

■ Coastal has failed to properly preserve the objection to the court's charge that it now urges on appeal. We do not believe that an objection based on an insubstantial foundation in the evidence alerted the court to any objection Coastal had to the specific content of any of the instructions. Instead we find that Coastal's objection focused on the sufficiency of the evidence presented to the court, a matter which is beyond the scope of this appeal since Coastal had not appealed from any denial of a motion for a directed verdict on this issue.

■ However, review of an unobjected to error in the jury charge is permitted when "the error is so fundamental as to result in a miscarriage of justice," *Farrar v. Cain*, 756 F.2d 1148, 1150 (5th Cir.1985). Such a miscarriage occurs when an erroneous charge "is probably responsible for an incorrect verdict, leading to a result that is manifestly unjust." *Brooks v. Great Lakes Dredge-Dock Co.*, 754 F.2d 536, 538 (5th Cir.), *modified on other grounds*, 754 F.2d 539 (5th Cir.1985). Our review of the court's charge as it related to the relevant market and to conduct that can constitute an unreasonable restraint of trade leads us to the conclusion that no fundamental error occurred or that a miscarriage of justice resulted.

Accordingly, the judgment of the district court is AFFIRMED.

---

6. Coastal cites only *Anderson v. Sneed*, 615 S.W.2d 898, 904 (Tex.Civ.App.—El Paso 1981, no writ), which states in dicta that a legal malpractice claim is now limited by the four-year period of article 5527. We are not persuaded that *Anderson* can be read so broadly as to bring any action for damages based on tort into the four-year statute.

7. We agree with the district court that this finding bars Coastal's recovery. Coastal submits that such a finding is irrelevant to the fraud and unfair competition claims. We need not reach this issue, however, since we dispose of these two claims on statute of limitations grounds. *See supra* part II.