89 F.Supp.2d 840 (2000)
EDMARK INDUSTRIES SDN. BHD., Plaintiff,
v.
SOUTH ASIA INTERNATIONAL (H.K.) LTD. and Azad International, Inc.
No. Civ.A. 1:98CV1530.
United States District Court, E.D. Texas, Beaumont Division.
March 1, 2000.
*841 William C. Norvell, Jr., Scott Dion Marrs, Bruce Charles Morris, Beirne Maynard & Parsons, Houston, TX, J. Hoke Peacock II, Orgain Bell & Tucker, Beaumont, TX, for plaintiff.
David Lee Crawford, Phelps Dunbar, Houston, TX, for defendant.

MEMORANDUM OPINION
COBB, District Judge.
Before this court is plaintiff Edmark's Motion for Partial Summary Judgment against Azad International Inc. (Azad). Edmark moved for summary judgement on its claims against Azad for (1) copyright infringement; (2) violation of the Lanham Act for false advertising; and (3) common law unfair competition.

I. BACKGROUND
Edmark is the creator, patent holder, manufacturer and a distributor of a vegetable slicer known as the "Super Slicer" (the Edmark Slicer). The Edmark Slicer was developed during a period of about 25 months starting in 1990. (Declaration of Sam Low Banchai, p. 1) (hereinafter Low Declaration). On November 4, 1991 Edmark applied for a UK patent for the Edmark Slicer which was later issued on October 19, 1994 (No. 2,256,579). In the Spring of 1992, Edmark authored and created the brochure titled "Easy to Follow Instruction Guide" for distribution with the slicer and received a certificate of copyright registration for the guide dated February 2, 1996 from the United States *842 Patent and Trademark Office (PTO). (No. TX-4-140-358). In the Fall of 1994, Edmark authored and created a second brochure titled the "Optional Garnishing Accessories Guide" and received a certificate of registration on February 12, 1996. (No. TX-4-140-359). Both brochures were distributed with the Edmark slicers.
Azad International (Azad) is a New Jersey Corporation which imports foreign goods and arranges the overseas manufacture of products on behalf of buyers in the United States. (Khubani Affidavit of June 2, 1998, paragraph 4). Azad's president is Victor Khubani. Azad purchases between 75-80% of its products (including the slicer at issue) from Azad International Hong Kong Ltd. (Deposition of Victor Khubani, p. 79 attached to Plaintiff's Motion for Partial Summary Judgment as Exhibit 1 to Appendix II (hereinafter, Khubani Deposition)). Telebands is located next door to Azad International and Victor Khubani's son Ajit Khubani is Telebrands' majority stockholder and president. (Khubani Deposition, p. 11). Between October and December 1994, Azad imported and sold over 500,000 counterfeit slicers to Telebrands. (Khubani Deposition, p. 100, 107-08). With the counterfeit slicers, Azad also distributed counterfeit brochures which were identical copies of Edmark's brochures. (Compare Azad's brochure in exhibits 3 & 4 of Appendix II to Edmark's brochures in exhibits 2 & 3 of Appendix I). Edmark never gave Azad permission to copy or distribute the brochures. (Declaration of Sam Low Banchi, paragraph 10).
In 1996, Edmark sued various distributors and vendors of the counterfeit slicers in Federal District Court for the Southern District of Texas in Houston and won a preliminary injunction in Judge Hittner's court. (H-CV96-436). In that suit Edmark sued the distributors, Telebrands and Positive Response Television, and other vendors including Target and Venture Stores. Edmark claims that it discovered Azad's involvement during the discovery process of that suit.

II. SUMMARY JUDGEMENT STANDARD
Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a material fact and the Court must view the facts in the light most favorable to the non-movant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

III. ANALYSIS

A. Copyright Infringement
To establish copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 1-708 (1998), a plaintiff must establish ownership of a valid copyright and copying by the defendant. Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); Central Point Software v. Nugent, 903 F.Supp. 1057, 37 U.S.P.Q.2d 1051, 1052 (E.D.Tex.1995). The court will address each of these elements in turn after addressing the threshold issues of statute of limitations and choice of law.

1. Statute of Limitations
Azad argues that infringement claim is barred by the three year statute of limitations set forth in 17 U.S.C. § 507(b) since Azad's infringing acts occurred between October and December 1994, but suit was not filed until April 2, 1998. Edmark argues the discovery rule applies because the infringement was not discovered until the discovery phase of the Telebrands suit (filed February 8, 1996). The discovery rule tolls the operation of the statute until the point in time in which the plaintiff learned or by reasonable diligence could *843 have learned that it had a cause of action. See Taylor v. Meirick, 712 F.2d 1112, 1117-18 (7th Cir.1983). Edmark relies on the Low's supplemental declaration in which he states that he first learned of Azad's infringement during the discovery phase of the Telebrands suit Azad provides no counter evidence but only argues that Low's supplemental declaration is factually insufficient because it does not establish that Edmark acted with reasonable diligence. Azad does not contest that Edmark had knowledge prior to this date and it points to no event or occurrence which might have put Edmark on notice of Azad's activities.
Since it has the burden of proof, Edmark must show there is no genuine issue of material fact that it exercised reasonable diligence to toll the statute. Azad argues that Low's declaration is insufficient because it does not allege any facts regarding whether Low could or should have known of Azad's activities in the time between December 1994 and February 1996. Low's Declaration states that he knew of no facts which would lead him to believe or suspect that Azad was engaged in any activities that infringed on Edmark's rights. However, the standard for reasonable diligence is not merely based on the plaintiff's knowledge. "[I]t is not enough that [the plaintiff] did not discover he had a cause of action if a reasonable man in his shoes would have." Taylor, 712 F.2d at 1118. Under Texas law, whether one has exercised sufficient diligence is a fact question and is usually submitted to the jury. Matter of Placid Oil, Co., 932 F.2d 394, 398 (5th Cir.1991); Conoco, Inc. v. Amarillo Nat'l Bank, 950 S.W.2d 790, 798-800 (Tex.App.Amarillo 1997, no writ); El Paso Assocs., Ltd. v. J.R. Thurman & Co., 786 S.W.2d 17, 21 (Tex.App. El Paso 1990, no writ) (noting that ordinarily summary judgment should not be granted on the issue of the exercise of reasonable diligence under the discovery rule, as that issue is inherently for the jury). Given the nature of the standard for reasonable diligence, the court declines to hold that there is no genuine issue of material fact as to whether Edmark exercised reasonable diligence sufficient to toll the statute of limitations.

2. Application of United States Law.
Azad argues that Edmark cannot properly rely on the laws of the United States because the brochures were first created in Malaysia. Edmark argues that the court has subject matter jurisdiction because infringing acts took place in the United States. Neither party discusses the implications of applying Malaysian law.
Malaysia is a signatory to and member of the Uniform Copyright Convention, also called the Berne Convention. See 17 U.S.C. § 104, Treaties and Conventions (identifying Malaysia as a signatory to the Berne Convention for the Protection of Literary and Artistic Works of September 9, 1886 as Revised at Paris on July 24, 1971). The effective date for Malaysia is October 1, 1990. Under the convention, works created in a member state are protected by the copyright law of other member states. See also 17 U.S.C. § 104(b)(2) and (4) (extending protection under sections 102 and 103 of the Copyright Act to works first published in foreign countries which are members of the Berne Convention).
Under the approach developed by the Second Circuit in Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d Cir.1998), ownership is determined by the law of the country in which the work is created but infringement is governed by the law where the infringement took place. See also The Bridgeman Art Library, Ltd., v. Corel Corp., 25 F.Supp.2d 421, 426 (S.D.N.Y.1998). In Itar-Tass, the plaintiffs, a Russian news agency and major Russian language news agencies in Russia sued the Kurier, a Russian language newspaper based in New York which copied about 5000 articles from the plaintiffs' publications. In its conflicts analysis, the Second Circuit first determined that it should look to the law of the country in which the work was created to *844 determine ownership. Thus, the Itar-Tass court looked to Russian law to determine whether plaintiffs retained copyrights in the articles they published. For the infringement issue however, the court applied the principle of lex loci delicti and applied United States copyright law because the infringing acts took place in the United States. Itar-Tass, 153 F.3d at 91.
Resort to Malaysian law is not necessary given that Edmark applied for and received copyright registrations from the PTO in February, 1996. Copyright registration is sufficient to create a rebutable presumption of validity under United States law. 17 U.S.C. § 410(c). In granting the registration, the United States Patent and Trademark Office made an independent determination that the brochures were copyrightable under United States law. Edmark can establish the validity of its copyrights either under Malaysian law, or since it complied with the requirements of registration requirements, under United States law.[1]
Registration after the infringement does not preclude any recovery for copyright infringement. Under the Copyright Act, copyright protection begins at creation but the cause of action for infringement is unenforceable until registration. See Donald Frederick Evans v. Continental Homes, 785 F.2d 897, 903 (11th Cir. 1986).

3. Copyright Infringement: Ownership of a Valid Copyright
In the present case, it is undisputed that Azad distributed Edmark's brochures along with the counterfeit slicers. The only issue that Azad raises in response is the validity of the copyright.
Registration of a copyright with the United States Patent Office is prima facie evidence of the validity of the copyright and the facts stated in the certificate. 17 U.S.C. § 410(c). This includes the originality and susceptibility to copyright requirements contained in 17 U.S.C. § 102(a). The burden is on the defendant to rebut this presumption of validity. Donald Frederick Evans, 785 F.2d at 903; DSC Communications Corp. v. DGI Techs., Inc., 898 F.Supp. 1183, 1187 (N.D.Tex.1995); see also Lakedreams v. Taylor, 932 F.2d 1103, 1108 n. 10 (5th Cir.1991) (noting that although copyright registration creates a presumption, that presumption is not irrebutable); 3 NIMMER ON COPYRIGHT § 13.01[A], at 13-14.
Azad argues that the brochures fail to meet the originality requirement, i.e., that the brochures were not original creations. However, the Supreme Court has instructed that the threshold for originality is very lowan author need only to make choices as to which facts to include. See Feist, 499 U.S. at 348, 111 S.Ct. 1282. The Court held that while facts themselves may not be copyrighted, their presentation and display may be. Id. Only the components of the work which are original to the author, may be protected; others may copy the underlying facts from the publication, but not the precise words used to present them. Id. While Feist extended copyright protection to works which contained a bare minimum of originality it also limited protection to the original portions of those works. Thus the factual information contained in the business directory at issue in Feist was not copyrightable nor protected however, the manner of presentation and the precise words used to present them may be. Id. at 349. The *845 Court noted that "even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement." Id. at 348, 111 S.Ct. 1282. See Harper & Row, 471 U.S. at 547, 105 S.Ct. 2218. In the present case, Edmark's brochures are original work which is clearly subject to protection.
Azad next argues that Edmark's brochures are not original because a brochure for a German slicer (the Börner brochure, attached as Subexhibit 1 to Exhibit D of Azad's Response) existed when Edmark filed its registrations with the PTO. While the Börner brochure has some of the same photos and word descriptions, its appearance is quite distinct are there are numerous differences between the two. The color scheme and layout are completely different as is the slicer design itself. The Börner brochure is also written in three languages whereas the Edmark brochures are only in English. There are also several photographs and pictures used in the Börner brochure which are not present in the Edmark brochures.
Azad claims the failure to disclose the Borner brochure invalidates Edmark's registrations. However, the failure of the copyright owner to disclose prior art does not overcome the presumption of validity absent evidence of intent to deceive. See Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984); Apple Computer, Inc. v. Microsoft Corp., 759 F.Supp. 1444, 1454 (N.D.Cal.1991). Azad has presented no such evidence or argument that Edmark intended to deceive the PTO.
Azad next argues that the brochures are descriptive methods of operation and thus not subject to copyright protection. While the method of operation, process, system or procedure itself cannot be copyrighted, the descriptions or explanations of those operations and processes (which would be "literary works") can be protected. See 17 U.S.C. § 102. Edmark may copyright its description of how to operate the slicer, but it cannot copyright the slicer operation itself. Azad could have written a brochure describing how to operate Edmark's slicer but instead chose to make identical copies of Edmark's brochures.
The court is satisfied that there is no genuine issue of material fact that Edmark owned a valid copyright on the brochures and that Azad copied them. However, the court cannot grant summary judgment on the copyright infringement claim because a genuine issue of material fact remains as to whether Edmark exercised reasonable diligence sufficient to toll the statute of limitations.

B. Lanham Act violation
Edmark claims damages under 15 U.S.C. § 1125 which provides a remedy for any one who has been damaged by a false statement used in connection with the sale or advertising of goods. Edmark's complaint alleges that the boxes in which Azad's slicers were distributed contained false statements of fact. Specifically, Edmark claims that Azad advertised that its slicer used fine German steel when in fact it used Japanese steel. Azad advertised on the box that its slicer used German steel. Under the picture with the caption "Super Slicer!," the box reads: "Adjusts to any size slicing or shredding your recipe calls for. Simply turn the dial to adjust the thickness from thin to intermediate to thick. Features fine german [sic] surgical steel blades." Azad does not dispute Edmark's claim that it used Japanese steel. Moreover, Judge Hittner made the same finding in the Telebrands suit. (Hittner's Findings p. 6 & 10).
In order to show a violation of the Lanham Act, a plaintiff may demonstrate either that a commercial advertisement is literally false or that it is likely to mislead and confuse customers. Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1390 (5th Cir.1996). If a statement is shown to be literally false, a court may grant relief to the plaintiff without reference to the reaction *846 of buyers or consumers of the product. Avila v. Rubin, 84 F.3d 222, 227 (7th Cir.1996); see also PPX Enterprises, Inc., v. Audiofidelity Enterprises, Inc., 818 F.2d 266, 272 (2d Cir.1987).
Azad claims there was no deception because (1) it only sold to two customers, Positive Response Television and Telebrands, who knew that the knives were made of Japanese steel; (2) the statement on the box was not conspicuous; and (3) that the representation as to the quality of the steel is not material.
Azad's first argument is irrelevant. The language of the statute subsection (b) makes clear that confusion or deception is not required to prove a violation.
"Any person who, on or in connection with ... any container for goods, uses in commerce any word, term, ... or ... false or misleading description of fact, ... whichin commercial advertising ... misrepresents the nature, characteristics, qualities, or geographic origin of his ... goods ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B).
Whether or not Telebrands and PRTV knew Azad's slicers where really made of Japanese steel is not the basis of the violation. Azad knew Telebrands and PRTV would sell the slicers in retail stores where consumers would see and presumably read the box in making purchasing decisions. That Telebrands and PRTV were part of the deception is not a defense.
Azad's second argument, that the statement is not conspicuous, goes to damages, not to whether a violation occurred. Section 1125 makes no distinction between conspicuous and inconspicuous false statements of fact. The same analysis also applies to Azad's third argument that the representation is not material. Materiality is not an element under section 1125 when a false statement is made-at best, it is a damage issue for the jury. Since there is a literally false statement, there is a presumption of damages on which plaintiff will be able to present evidence before the trier of fact. See PPX, 818 F.2d at 272-73.
Since Azad's claim is literally false, there is also no need to prove that consumers are likely to be deceivedthe only issue is damages. While there is no evidence before the court to determine the amount damages at this time, it is clear that Edmark is entitled to monetary relief because of Azad's violation of the Lanham Act.
The Lanham Act violation is governed by the four year statute of limitations under Texas law. See TEX.CIV.PRAC. & REM.CODE § 16.004; Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc., 934 F.Supp. 796, 805 (S.D.Tex.1996) (holding that the Texas four-year fraud limitations period applies to Lanham Act claims under section 43(a)). Edmark filed within the statutory period and Azad does not contest this issue.
The court is satisfied that there is no genuine issue of material fact as to Edmark's claim that Azad violated provisions of the Lanham Act and that summary judgment should be entered for the Edmark on this claim.

C. Common Law Unfair Competition
Edmarks' common law claim for unfair competition is based on the Lanham Act violation. A violation of the Lanham Act automatically provides a cause of action for common law unfair competition. See Babbit Electronics Inc., v. Dynascan Corp., 38 F.3d 1161, 33 U.S.P.Q.2d 1001, 1016 (11th Cir.1994); Marathon Mfg. Co. v. Enerlite Products Corp., 767 F.2d 214, 217 (5th Cir.1985). Azad argues the claim for unfair competition is barred by the statute of limitations.
Common law claims are governed by the law of the state wherein the cause of action arises. See Jud Plumbing Shop v. Jud Plumbing & Heating, 695 S.W.2d 75, 78 (Tex.App.San Antonio 1985, no writ); General Adjustment Bureau, Inc., v. Fuess, 192 F.Supp. 542, 547 (S.D.Tex. *847 1961). Edmark does not dispute that Texas law provides the applicable two year limitations period because unfair competition is a tort. TEX.CIV.PRAC. & REM.CODE § 16.003 (Vernon 1986). This suit was filed over two years after the claim was alleged to have been discovered thus, unlike the infringement claim, the discovery rule will not operate to save this common law claim.[2]
Edmark argues that the statute has not run because Azad's actions constitute a continuing wrong which means that the statute does not begin to run until the last infringing act takes place. See Taylor, 712 F.2d at 1119. The "continuing wrong" theory, espoused by Judge Posner in Taylor, takes a broad view of infringement and includes the defendant's actions outside the limitations period which continue to cause harm to the plaintiff. The theory is based on the principle that the statute of limitation does not begin to run on a continuing wrong until the wrong is over and done with. In Taylor, the defendant Meirick had ceased selling maps but had become a party to the infringement because his dealers continued to sell maps until the time the suit was filed. Id. at 1119 The court viewed the defendant's conduct not as a separate and completed wrong, but simply as the first step in a course of wrongful conduct that continued until the last copy of the infringing map was sold. Id. The court noted that Meirick knew he had copied and sold infringing maps and that his failure to take any action to prevent the sale of those maps to consumers made him a party to the dealer's infringements. The court reasoned:
If Meirick has quit selling the infringing maps before May 8, 1977, and had taken reasonable steps by then to get them back from his dealers before the maps were resold to consumers, this suit would be time-barred even ifas happened the maps were still being sold years later by dealers who had bought them from Meirick before May 8, 1977 but had not gotten, or had ignored, the message and continued selling them to the public. But knowing that he had placed infringing copies in the hands of his dealers Meirick could not sit on his hands while they sold them. A tortfeasor has a duty to assist his victim. The initial injury creates a duty of aid an the breach of the duty is an independent tort.... So if Meirick failed to take reasonable steps to prevent infringement by his dealers he became a participant in their infringements.
Taylor, at 1117. Applied to the present case, this expansive view of infringement effectively makes the subsequent dealers, Telebrands and Positive Response Television, agents of Azad for statute of limitations purposes.
The Fifth Circuit however, has on two occasions rejected the Taylor approach. See Daboub v. Gibbons, 42 F.3d 285, 290-91 (5th Cir.1995); Makedwde Publishing Co. v. Johnson, 37 F.3d 180, 181-82 (5th Cir.1994). Both cases dealt with infringement of copyrights for songs. In Makedwde, assignees of rights in a copyrighted song called "Carnival Time" sued Jones, the former president of the corporation that had arranged for the song to be sung by others. Jones had been separated from the corporation for six years and filed a motion to dismiss based on the three year statute of limitations. 37 F.3d at 180-81. The district court applied the continuing wrong theory and denied summary judgment. The Fifth Circuit reversed holding Jones could only be held liable for the acts that he committed within the three year period prior to filing of the suit (of which there were none).[3] The Fifth Circuit reasoned that holding Jones liable for actions he was not directly, vicariously, individually, or jointly liable for would be a socially *848 preposterous and commercially disastrous doctrine. Id. at 182.
The next year, the Fifth Circuit decided Daboub in which plaintiffs claimed that ZZ Top's song "Thunderbird" had been pirated from the plaintiffs' earlier release. Plaintiffs had recorded their version of Thunderbird in the 1950s and released an album but failed to obtain copyright registration. ZZ Top recorded and released its version of the song in 1975. Plaintiffs admitted that they had knowledge of the infringement more than four years prior to filing suit and thus could only rely on the continuing wrong theory. The Fifth Circuit declined to apply the theory because it feared that the statute of limitations would never accrue as the tort would be extended every time the song was played in violation of the copyright. 42 F.3d at 291. Moreover, in cases involving musical recordings, damages would increase each time a copy of the song was sold or played on the radio; such a result, the court noted would frustrate the policy behind the copyright statutes. Id.
Unfortunately for Edmark, the continuing wrong theory has been twice rejected by the Fifth Circuit and this court sees no reason to challenge this precedent. Edmarks' claim for common law unfair competition is thus barred by the applicable statute of limitations and accordingly, summary judgment on this claim is denied.

IV. CONCLUSION
For the above stated reasons, the court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment. Summary judgment is granted for Edmark's claim against Azad for violations of the Lanham Act and denied as to Edmark's claims against Azad for copyright infringement and common law unfair competition.
NOTES
[1] This dual system is apparent from an examination of the Copyright Act. The copyright act employs of two tier system of protection in which United States works must be registered as a prerequisite to infringement suits while works created in Berne Convention countries are exempt from registration requirements. See 1 BOORSTYN ON COPYRIGHT § 1.08, p. 1-45 to 1-46 (1999). While registration is not necessary, Boorstyn highly recommends that foreign works be registered in order to take advantage of the presumption of copyright validity under section 410(c) and to be entitled to statutory damages and attorney's fees under section 412. Id. at 1-47.
[2] The discovery rule does not apply to claims for common law unfair competition. See Daboub v. Gibbons, 42 F.3d 285, 291 n. 10 (5th Cir.1995); Coastal Distrib. Co. v. NGK Spark Plug Co., 779 F.2d 1033, 1035 (5th Cir.1986).
[3] This was a copyright infringement suit, not a common law unfair competition claim so the three year statute of limitations applied.