**P.I.T.S. FILMS, a partnership d/b/a Tandem Productions, Plaintiff,**

v.

**Richard LACONIS, d/b/a Archie Bunkers Junkers, Defendant.**

**No. 83–CV 5177–DT.**

United States District Court, E.D. Michigan, S.D.

Aug. 3, 1984.

---

Thomas M. McKinley, Grand Rapids, Mich., for plaintiff.

Owen E. Perry, Troy, Mich., for defendant.

## OPINION

RALPH B. GUY, Jr., District Judge.

Plaintiff instituted this action on November 28, 1983. Plaintiff is a partnership which developed, distributed, and produced the television series "All in the Family" and "Archie Bunker's Place." The original complaint was in three counts. Plaintiff subsequently sought, and was granted, leave to amend its complaint to add two counts. As amended, the complaint contains: Counts One and Two, which allege violations of federal trademark law; Count Three, which states a claim under state law for unfair competition; Count Four, which alleges a claim under state law for unjust enrichment and quantum meruit; and Count Five, which alleges copyright infringement. In essence, plaintiff objects to the use of slogans, marks, and characters developed by plaintiff in the defendant's promotion of his business styled "Archie Bunker's Junkers."

Now before the court is defendant's motion to dismiss Count Four. On June 27, 1984, the court heard oral argument on this motion and took the matter under advisement. The court wished to further consider the new argument raised by defendant during the hearing, which argument flowed from the June 15, 1984, order granting plaintiff's motion for leave to amend. In short, defendant's major contention had become the argument that plaintiff's Count Four was preempted by explicit provision of the Copyright Act of 1976, *see* 17 U.S.C. § 301. In response, plaintiff argued that the claim alleged in Count Four contained elements which removed it from those claims preempted under the Act.

Title 17, United States Code, § 301, states in relevant part:

§ 301. *Preemption with respect to other laws*

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after the date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

\*    \*    \*    \*    \*    \*

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

\*    \*    \*    \*    \*    \*

(d) Nothing in this title annuls or limits any rights or remedies under any other Federal statute.

As indicated earlier, defendant does not challenge plaintiff's counts under Federal trademark and related State unfair competition law. Further, neither defendant nor plaintiff argue that the subject matter referenced in Count Four is not within the subject matter of copyright. Accordingly, the only issue remaining is whether Count Four alleges the violation of rights "equivalent to any of the exclusive rights within the general scope of copyright," 17 U.S.C. § 301(a) and (b)(3). Having considered this question, the court concludes that the rights alleged are equivalent, and that Count Four must therefore be dismissed.

As an initial matter, the court would note that none of the case law cited by plaintiff is supportive of a theory other than traditional state unfair competition such as is alleged in Count Three. However, considering the explanation of Count Four provided by plaintiff during the hearing, and considering the allegations stated in Count Four, it is evident that plaintiff grounds this count on a theory of misappropriation by the defendant's use of slogans and characters (of a copyrightable nature) by display and other promotional techniques. With regard to claims of misappropriation, the Notes of the Committee on the Judiciary provide the following guidance:

*Preemption of State Law.* The intention of section 301 [this section] is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law. The declaration of this principle in section 301 [this section] is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection.

\* \* \* \* \* \*

As long as a work fits within one of the general subject matter categories of sections 102 and 103 [sections 102 and 103 of this title], the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain.

\* \* \* \* \* \*

The preemption of rights under State law is complete with respect to any work coming within the scope of the bill, even though the scope of exclusive rights given the work under the bill is narrower. than the scope of common law rights in the work might have been.

\* \* \* \* \* \*

In a general way subsection (b) of section 391 [subsec. (b) of this section] represents the obverse of subsection (a). It sets out, in broad terms and without necessarily being exhaustive, some of the principal areas of protection that preemption would not prevent the State from protecting. Its purpose is to make clear, consistent with the 1964 Supreme Court decisions in *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 [84 S.Ct. 784, 11 L.Ed.2d 661] *rehearing denied*, 376 U.S. 973 [84 S.Ct. 1131, 12 L.Ed.2d 87]; and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 [84 S.Ct. 779, 11 L.Ed.2d 669] that preemption does not extend to causes of action, or subject matter outside the scope of the revised Federal copyright statute.

The numbered clauses of subsection (b) list three general areas left unaffected by the preemption: (1) subject matter that does not come within the subject matter of copyright; (2) causes of action arising under State law before the effective date of the statute [Jan. 1, 1978]; and (3) violations of rights that are not equivalent to any of the exclusive rights under copyright.

The [following examples], while not exhaustive, are intended to illustrate rights and remedies that are different in nature

from the rights comprised in a copyright and that may continue to be protected under State common law or statute. The evolving common law rights of "privacy," "publicity," and trade secrets, and the general laws of defamation and fraud, would remain unaffected as long as the causes of action contain elements, such as an invasion of personal rights or a breach of trust or confidentiality, that are different in kind from copyright infringement. Nothing in the bill derogates from the rights of parties to contract with each other and to sue for breaches of contract; however, to the extent that the unfair competition concept known as "interference with contract relations" is merely the equivalent of copyright protection, it would be preempted.

The last example ... "deceptive trade practices such as passing off and false representation" represents an effort to distinguish between those causes of action known as "unfair competition" that the copyright statute is not intended to preempt and those that it is. Section 301 [this section] is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute.

"Misappropriation" is not necessarily synonymous with copyright infringement, and thus a cause of action labeled as "misappropriation" is not preempted if it is fact based neither on a right within the general scope of copyright as specified by section 106 [section 106 of this title] nor on a right equivalent thereto. For example, state law should have the flexibility to afford a remedy (under traditional principles of equality) against a consistent pattern of unauthorized appropriation by a competitor of the facts (i.e., not the literary expression) constituting "hot" news, whether in the traditional mold of *International News Service v. Associated Press*, 248 U.S. 215 (1918) [39 S.Ct. 68, 63 L.Ed. 211], or in the newer form of data updates from scientific, business, or financial data bases.

House Report No. 94–1476, U.S.Code Cong. & Admin.News 1976, pp. 5659, 5746.

Applying the above, the court would observe that Count Four does not contain any element, such as an invasion of personal rights or a breach of a fiduciary relationship, which render this count different in kind from copyright infringement. Moreover, the count does not allege the consistent misappropriation of fact or other non-copyrightable matter, by one in competition with the plaintiff. Rather, what plaintiff alleges is a misappropriation of a nature which must be considered preempted under § 301. *Cf. Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 222 U.S.P.Q. 101 (2nd Cir.1983); *see, also*, 1 *Nimmer on Copyright* § 1.01[B] (1983). Count Four is thus distinguished from Count Three which, because plaintiff alleges unfair competition by virtue of misrepresentation and passing off, is not subject to preemption. *Id.* Accordingly, the court finds that Count Four must be dismissed.