United States Court of Appeals,

Fifth Circuit.

No. 94-10129.

Mario A. DABOUB, d/b/a The Nightcaps, et al., Plaintiffs-Appellants,

v.

William Frederick GIBBONS, et al., Defendants-Appellees.

Jan. 12, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

Imitation may be the sincerest form of flattery, but it may also lead to jealousy when the imitator succeeds where the imitated does not. In this case, the object of imitation is a rock and roll song.

I.

The appellants, members of the rock and roll band the Nightcaps, claim that the appellees, members of the rock and roll band ZZ Top, are copycats and stole the song *Thunderbird* from them. The Nightcaps allege a number of state and federal law violations based on ZZ Top's version of *Thunderbird.* Before addressing these legal theories, we present a brief description of the cast of the contestants in this battle of the bands.

The members of the Nightcaps formed the band in the 1950's when they were teenagers. The band recorded and released *Thunderbird* as a single and on an LP entitled *Wine, Wine, Wine.*

1

The Nightcaps performed the song and distributed the album, but never applied for a copyright. Apparently the song and the album did not shower the Nightcaps with fame and fortune, and the band broke up in the 1960's.

ZZ Top, in contrast, is currently a very successful band. The group, originally formed in 1969, also recorded and released a song entitled *Thunderbird.* ZZ Top's version of *Thunderbird* can be heard on its 1975 album *Fandango!,* its compilation set, and in concert. ZZ Top obtained a copyright on the song in 1975.

ZZ Top concedes, for the purposes of this appeal, that its version of the song *Thunderbird* is musically and lyrically identical to the version originally written and performed by the Nightcaps.[1]

## II.

After the pleadings had been filed, the district court referred the case to a magistrate. The magistrate found that the Nightcaps' state and federal claims were either preempted by the Federal Copyright Statute, 17 U.S.C. § 101, *et seq.,* (the "Copyright Act"), or were barred by the applicable statutes of limitations. The magistrate issued a report which recommended that the Nightcaps' complaint be dismissed, or alternatively, that summary judgment be granted in ZZ Top's favor. The district court adopted the magistrate's report and recommendations, and granted summary judgment to ZZ Top. The Nightcaps appeal to this court.

_____

[1]This concession is in tune with our review of the record on appeal, which includes a tape recording of performances of the song by both bands.

The Nightcaps versify arguments urging us to reverse the district court's grant of summary judgment. They assert that summary judgment was improperly granted because they were not permitted adequate discovery. Second, the Nightcaps insist that the district court improperly determined that the federal copyright law preempted their state law causes of action. Finally, the Nightcaps argue that the relevant statutes of limitations do not silence the melodies of their claims.

### III.

The Nightcaps claim that they were denied sufficient discovery, and that therefore the district court prematurely considered ZZ Top's summary judgment motion. However, the Nightcaps have failed to *specifically* state what information they seek to obtain through discovery and how discovery would help their case. ZZ Top has accepted all of the Nightcaps' factual allegations for purposes of the motions to dismiss and for summary judgment. The record does not indicate that the district court was overly parsimonious in allowing time for discovery, and we cannot even find any bait for the Nightcaps to conduct a fishing expedition. The Nightcaps' simple request for additional time to compose additional discovery is not sufficient to meet the burden of articulating specific facts establishing a genuine dispute for trial. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 28 F.3d 1388 (5th Cir.1994); *Nowlin v. Resolution Trust Co.,*

3

33 F.3d 498 (5th Cir.1994). Therefore, the Nightcaps' silence as far as naming what they are looking for through discovery is fatal to their argument, and the district court's decision to rule on the summary judgment motion was proper.

## IV.

The Nightcaps sing a chorus of state and federal law theories in their attempt to escape the grasp of the Copyright Act's preemption provision, 17 U.S.C. § 301(a). The Copyright Act expressly preempts all causes of action falling within its scope, with a few exceptions. The Nightcaps' arguments against preemption fall into two categories. First, the Nightcaps argue that a statutory exception to the preemption provision applies to their claims. Second, the Nightcaps argue that their causes of action are not "equivalent" to a cause of action under the Copyright Act, and therefore § 301(a) does not apply.

The Nightcaps argue that the exception found in § 301(c)[2] applies to this case, because *Thunderbird* is a "sound recording" that was "fixed" prior to 1972. ZZ Top argues, and the lower court held, that the exception does not apply to the case at bar.

Section 301(c) was intended to apply to "pirated" recordings of performances, rather than to the lyrics alone. One commentator analyzing the exception stated:

---

[2]That provision states, in part:

> With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2047....

4

> The distinction may be summed up as the difference between a copyright in a Cole Porter song and a copyright in Frank Sinatra's performance of that song. The former would be a musical work copyright and the latter would be a sound recording copyright, although both may be embodied in the same phonorecord.

1 M. Nimmer, *Copyright* § 4.06, p. 4-34 n. 1. *See also Jarvis v. A & M Records,* 827 F.Supp. 282, 292 (D.N.J.1993). In the case before us, the Nightcaps do not allege that ZZ Top presented a recorded version of the Nightcaps' rendition of *Thunderbird* as if it were performed by ZZ Top. Instead, the Nightcaps simply claim that ZZ Top wrongfully took the words of the song and recorded its own version.[3] In Nimmer's analogy, the Nightcaps are like Cole Porter, not Frank Sinatra. Thus, the § 301(c) exception does not apply to this case.

The next verse of the Nightcaps' argument is that § 301(a) does not preempt the Nightcaps' suggested causes of action. Section 301(a) accomplishes the general federal policy of creating a uniform method for protecting and enforcing certain rights in intellectual property by preempting other claims.[4] The courts have

---

[3]Even though this court is not comprised of music critics, we conclude upon a review of the recordings in the record that no reasonable audience would mistake ZZ Top's performance of *Thunderbird* for that of the Nightcaps.

[4]That section provides that:

> (a) On and after January 1, 1978, all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no

5

interpreted the provision to contain a two-step test.  First, the cause of action is examined to determine if it falls "within the subject matter of copyright."   Second, the cause of action is examined to determine if it protects rights that are "equivalent" to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106.  *Gemcraft Homes, Inc. v. Sumurdy,* 688 F.Supp. 289, 294 (E.D.Tex.1988) (citing *Crow v. Wainwright,* 720 F.2d 1224, 1226 (11th Cir.1983), *cert. denied,* 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 35 (1984)).  Section 106 grants the holder of a copyright the exclusive right to reproduce, distribute, perform, and display the copyrighted work.[5]

person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

[5]Section 106 provides that:

Subject to sections 107 through 120, the owner of copyright under this title has the exclusive right to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;  and

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including

The Nightcaps' argument focuses on the "equivalency" step.[6] The Nightcaps attempt to demonstrate how their state law claims are not "equivalent" to a cause of action under the Copyright Act by focussing on the specific elements of the causes of action they allege. ZZ Top argues, and the district court held, that these state law causes of action are "equivalent" to the exclusive rights contained in the Copyright Act, and therefore these causes of action are preempted.

The Nightcaps primarily rely on *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service,* 958 F.2d 896 (9th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993), to support their interpretation of the equivalency step and their contention that their state law claims are not preempted. However, that case is distinguishable from the case at hand. In *G.S. Rasmussen,* the court held that the Copyright Act did not preempt the plaintiff's claims, because those claims addressed interests that were not equivalent to interests protected by the Copyright Act. *Id.* at 904. The plaintiff in that case complained about the *use* of copyrighted material in order to obtain a regulatory permit. *Id.* The plaintiff was not simply complaining about the improper

----

the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

[6]The Nightcaps do not argue with the conclusion that the first step of the test is satisfied in this case. This assumption is appropriate. *Del Madera Properties v. Rhodes and Gardner, Ind.,* 820 F.2d 973, 976 (9th Cir.1987); *Gemcraft Homes,* 688 F.Supp. at 294; *Motown Record Corp. v. George A. Hormel & Co.,* 657 F.Supp. 1236, 1239 (C.D.Cal.1987).

7

copying of the copyrighted material. *G.S. Rasmussen* is distinguishable from the case before us, because the Nightcaps' state claims center on the improper copying of the song, an interest clearly protected by the Copyright Act. The Nightcaps' state law claims include conversion, misappropriation, plagiarism, a violation of the Texas Free Enterprise and Antitrust Act of 1983, disparagement, and defamation. The core of each of these state law theories of recovery in this case, without detailing the specific elements comprising each claim, is the same: the wrongful copying, distribution, and performance of the lyrics of *Thunderbird.* The similitude of tunes with respect to the state and copyright causes of action is a most harmonious one. The Nightcaps have failed to allege or produce evidence of "any element, such as an invasion of personal rights or a breach of fiduciary duty, which render [their claims] different in kind from copyright infringement." *P.I.T.S. Films v. Laconis,* 588 F.Supp. 1383 (E.D.Mich.1984). As another court stated:

> "The elements in plaintiff's [state law action] involve elements that would not establish qualitatively different conduct by the defendants than the elements for an action under the Copyright Act. Thus, there is equivalence between the state and federal rights."

*Quincy Cablesystems Inc. v. Sully's Bar, Inc.,* 650 F.Supp. 838, 850 (D.Mass.1986). Finding no disharmony between the elements of the state law claims and the federal law in this case, we have no hesitancy in pronouncing enough equivalency to satisfy § 301(a).[7]

---

[7]*See also Jarvis v. A & M Records,* 827 F.Supp. 282, 297-99 (D.N.J.1993) (holding that state law claims were preempted by § 301)

In effect, the Nightcaps have attempted to avoid the Copyright Act by presenting as many state law causes of action to the court as possible. The Nightcaps' argument is like a ventriloquist's attempt to present a copyright action in the voice of state law claims. However, if the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced.[8]

## V.

All of the Nightcaps' arguments confront a formidable hurdle in the form of statutes of limitations. ZZ Top obtained a copyright for *Thunderbird* in 1975, when the band released *Fandango!,* and the band has publicly performed the song ever since. The Nightcaps filed their complaint against ZZ Top in December, 1992. The state law limitations period for some of the alleged causes of action, such as misappropriation, unfair competition, and conversion, is two years. Tex.Civ.Prac. & Rem.Code § 16.003; *see e.g., In re Placid Oil Co.,* 932 F.2d 394, 398 (5th Cir.1991); *Coastal Distributing Co. v. NGK Spark Plug Co.,* 779 F.2d 1033 (5th Cir.1986). The limitations period for fraud is four years.

---

[8]*See* Notes of Committee on the Judiciary, House Report No. 94-1476, U.S.Code Cong. & Admin.News 1976, 5659, 5746. "Preemption of State Law. The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law. The declaration of this principle in section 301 is intended to be stated in *the clearest and most unequivocal language possible,* so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and *to avoid the development of any vague borderline areas between State and Federal protection."* (emphasis supplied).

Tex.Civ.Prac. & Rem.Code § 16.004; *Williams v. Khalaf,* 802 S.W.2d 651 (Tex.1990). Under either limitations period, the claims are time barred, as the underlying alleged wrongful act took place in 1975, when ZZ Top acquired a copyright and property interest in the song. *See Mention v. Gessell,* 714 F.2d 87 (9th Cir.1983) (holding that statute of limitations barred common law causes of action for copying).

The Nightcaps present two arguments to overcome this conclusion. First, the Nightcaps argue that ZZ Top's actions amount to a continuing tort, and therefore "the statute of limitations has not even begun to run." Second, the Nightcaps argue that the discovery rule should toll the statute of limitations until each member of the band "discovers, or in the exercise of reasonable diligence should have discovered the facts establishing the cause of action and the nature of the injury." ZZ Top argues that neither the doctrine of continuing tort nor the discovery rule applies in this case.

The Nightcaps' continuing tort argument is based on an expansive reading of the alleged tortious activity. The Nightcaps claim that each time ZZ Top sold an album containing *Thunderbird,* or performed the song, and every time the song was broadcast, ZZ Top took another step in its tortious behavior. The Nightcaps claim that music, unlike tangible property, can be converted over and over again. The case the Nightcaps primarily rely upon for applying the continuing tort theory is distinguishable on both its factual and legal basis. *Twyman v. Twyman,* 855 S.W.2d 619

10

(Tex.1993) (action for negligent infliction of emotional distress based on husband's attempts to have wife engage in bondage did not accrue until husband's attempts ceased).  The continuing tort theory has been rejected or not even mentioned in cases involving similar situations to the case at hand.  *See e.g., Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (1983) (rejecting the notion of a "continuing trespass")*; Gee v. CBS, Inc.,* 471 F.Supp. 600 (E.D.Pa.1979), *aff'd,* 612 F.2d 572 (3d Cir.1971).  The *Gee* case concerned recordings of Bessie Smith, the "Empress of the Blues."  In *Gee,* the defendant released copies of Smith's recordings at several intervals, including in 1951 and 1970-72.  The district court issued a thorough, intensive opinion which examined statute of limitations defenses, copyright, and state claims.  The court held that all of the plaintiffs claims were either barred by the applicable statute of limitations or otherwise fatally flawed.  The *Gee* court did not mention a continuing tort theory in its expansive opinion.

The Nightcaps' observations and argument appropriately elucidates a concept of continuing damages, rather than a continuing tort.[9]  Each time ZZ Top sells a single of *Thunderbird,* the Nightcaps damages may increase, but the tort was committed when ZZ Top copyrighted the song.  Application of a continuing tort

---

[9]*Cf. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 512-15 (9th Cir.1985), *cert. denied, Metro-Goldwyn-Mayer, Inc. v. Frank Music Corp.,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990)*; Gaste v. Kaiserman,* 863 F.2d 1061, 1069 (2d Cir.1988)*; Jarvis v. A & M Records,* 827 F.Supp. 282, 293-94 (D.N.J.1993).

theory would go so far as to frustrate the policy behind the copyright statute. If the continuing tort theory were applied to cases involving musical recordings, then the statute of limitations would never apply to these cases. If the song were played once on the radio, or someone bought a copy of a recording at a store the day before trial, the case would be brought within the statute of limitations and the tort resurrected. But in this case, the waltz was over by the time the Nightcaps filed suit.

Finally, the Nightcaps argue that the discovery rule should be applied in this case and that the statutes of limitations should be tolled until each of the individual members of the Nightcaps obtained actual knowledge, or through reasonable diligence could have obtained actual knowledge, of ZZ Top's conduct. We note that the discovery rule is not applied in several of the causes of action presented by the Nightcaps.[10] With regard to the remaining causes of action, including the RICO claim, even if the discovery rule did apply, we agree with the district court that those causes of action are barred by the limitations. First, the Copyright Act expressly provides that "[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated" in a properly registered document. 17 U.S.C. § 205(c).

---

[10]The discovery rule is not applied in the contexts of conversion (*Pierson v. GFH Financial Services Corp.,* 829 S.W.2d 311, 314 (Tex.Ct.App.—Austin 1992, *no writ* )); misappropriation (*Coastal Distributing Co. v. NGK Spark Plug Co.,* 779 F.2d 1033 (5th Cir.1986)); or unfair competition (*Coastal,* 779 F.2d at 1035-36). It seems to apply in RICO actions. *La Porte Constr. Co., Inc. v. Bayshore Nat. Bank,* 805 F.2d 1254, 1256 (5th Cir.1986).

12

Second, several members of the Nightcaps admitted that they knew about ZZ Top's version of *Thunderbird* in 1981. ZZ Top's actions were not covert or concealed. Indeed, many copies of *Fandango!* were released and ZZ Top performed the song publicly. The Nightcaps either knew, or through reasonable diligence should have known, about ZZ Top's actions more than four years before they brought this suit in 1992. Therefore, even if the Nightcaps causes of action survived the preemption provision of the Copyright Act, they were extinguished by the limitations period.

## VI.

For the above reasons, the judgment of the district court is AFFIRMED.

13