Antonio D. ASUNTO, as Administrator of Estate of Frank J. Asunto

v.

John SHOUP, Telerecord Television Productions, Ltd., T.L.P. of New Orleans, Inc., et al

No. Civ.A. 00–2306.

United States District Court, E.D. Louisiana.

Oct. 13, 2000.

John S. Keller, Keller Law Firm, New Orleans, LA, Richard C. Stanley, Stanley & Flanagan, L.L.C., New Orleans, LA, for plaintiff.

Stephen G. Bullock, Michael Q. Walsh, Jr., Jason Matthew Bilbe, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, for John Shoup, defendant.

Eugene R. Preaus, Barbara Malik Weller, Preaus, Roddy & Krebs, New Orleans, LA, for CBS Broadcasting, Inc., Sony Music Entertainment, Inc.

DUVAL, District Judge.

Before the Court is a Motion to Remand filed by plaintiff Antonio D. Asunto, as Administrator of the Estate of Frank. J. Asunto, which came for hearing on August 30, 2000. This Court has reviewed the pleadings, memoranda and the relevant case law and finds the motion has merit for the reasons that follow.

## Background

This action has been brought to determine the ownership of royalties paid in connection with the music of a jazz band called "The Dukes of Dixieland" ("the Dukes"). The origins of the suit go back to 1947 when plaintiff's father Frank J. Asunto, together with his brother, Fred Asunto, formed the jazz band known as the "Dukes of Dixieland." The band produced several studio and live recordings between the band's formation and Frank's death in 1974 (petition ¶ 6). It appears that all of the recordings at issue were actually made prior to 1972. *See* affidavit of Antonio Asunto. According to plaintiff's petition, Frank Asunto collected royalties from recording and distribution contracts in connection with the Dukes music until his death in 1974 (petition ¶ 6). Plaintiff alleges that the Estate of Frank J. Asunto is owed royalty payments from those recording and distribution companies.

Plaintiff, in his capacity as administrator of the Estate of Frank J. Asunto, filed the instant lawsuit in the Civil District Court for the Parish of Orleans on June 19, 2000. He sued John Shoup, T.L.P. of New Orleans, Telerecord Television Productions, Ltd (collectively referred to as the "Shoup Defendants") and twenty-one additional music recording and distribution companies (collectively referred to as the "Recording and Distributing Defendants"). Plaintiff asserted the following causes of action:

(1) Accounting

Plaintiff claims that the Shoup Defendants and the Recording and Distribution

Defendants owe an accounting for all royalties paid in connection with any music or live performances of the Dukes of Dixieland, including the amounts collected and the recipients of those payments (petition ¶ 14).

### (2) Breach of Duty

Plaintiff alleges that the Recording and Distribution Defendants owed contractual and fiduciary duties to the Estate in connection with royalty payments on the Dukes music (petition ¶ 16). To the extent the accounting uncovers payments of royalties to persons or entities other than the plaintiff, plaintiff claims that the Recording and Distribution Defendants are liable for breach of contractual and fiduciary duties.

### (3) Conversion

Plaintiff claims that the Shoup Defendants have collected royalty payments without authority (petition ¶ 19). If this allegation is indeed true, plaintiff alleges that the Shoup Defendants have converted monies due and owing to the plaintiff. *Id.*

### (4) Unjust Enrichment

Plaintiff alleges that, to the extent the Shoup Defendants have collected royalties without authority, they have been unjustly enriched to the plaintiff's detriment (petition ¶ 21).

### (5) Declaratory Judgment and Permanent Injunction

Plaintiff seeks declaratory and injunctive relief acknowledging that the Estate of Frank J. Asunto and the lawful heirs of Frank J. Asunto are entitled to all rights and ownership associated with the music of The Dukes of Dixieland produced from 1946–1974 (petition ¶ 23). Thus, they request that no person or entity be permitted to sell any of the music recorded by the Dukes of Dixieland from 1946–1974

without express written authorization of the Estate. *Id.* Plaintiff does not seek a moratorium on distribution and marketing of the music; instead they wish to be declared owners of the music and receive royalties flowing therefrom.

Defendant John Shoup ("defendant") removed the action to this Court on August 4, 2000. The stated bases for removal were that plaintiff's allegations raise a federal question under the Copyright Act of 1976 ("The Act"), 17 U.S.C. § 101 *et seq,* and that all state law claims are preempted under § 301 of the same. Plaintiff seeks to have the case remanded on the grounds that it simply seeks to determine the extent of its contract rights as successor in interest to Frank J. Asunto and that absent federal question jurisdiction or diversity of citizenship between the parties, this Court lacks subject matter jurisdiction over the matter. Plaintiff also seeks to have the case remanded based on a procedural defect in the removal, namely that defendant failed to obtain the consent of co-defendant Happy Hour Music, Inc.

It is defendant's position [1] that plaintiff has artfully pleaded his petition to avoid necessary federal questions under the Act. It argues that plaintiff has not directly alleged the existence of contracts between Frank Asunto and the defendants. Defendant further contends that plaintiff seeks money for the making and copying of Frank's music, and thus in reality asserts a claim for copyright infringement under 17 U.S.C. § 501. As to the removal issue, defendant argues that plaintiff failed to prove that Happy Hour, Inc. was properly served, that it is not an active corporation, and that it does not currently reside at the address where the long arm service was mailed.

### Removal Jurisdiction

Title 28 U.S.C. § 1441(b) permits removal of any "civil action of which the district courts have original jurisdiction

1. John Shoup's Opposition to Plaintiff's Motion to Remand has been adopted by co-defendants Sony Music Entertainment, Inc. and CBS Broadcasting, Inc.

founded on a claim or right arising under the Constitution, treaties, or laws of the United States." . Removal jurisdiction must be strictly construed, however, because it "implicates important federalism concerns." *Frank v. Bear Stearns & Co.,* 128 F.3d 919, 922 (5th Cir.1997). The burden of establishing federal jurisdiction is on the party seeking removal. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988). In addition, any doubts about removal must be construed against removal and in favor of remanding the case back to state court. *See Vasquez v. Alto Bonito Gravel Plant Corp.,* 56 F.3d 689, 694 (5th Cir.1995).

In order to determine whether a case was properly removed to federal court on the basis of federal question jurisdiction, the court must examine plaintiff's complaint under the well-pleaded complaint rule. *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). Under that doctrine, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987)). Yet, the plaintiff may choose to forgo the federal claims in order to prevent removal. "The [well-pleaded complaint] rule makes the plaintiff master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429. This right, however, is trumped where the area of law is preempted by federal legislation.

**Copyright Preemption**

Defendant argues that the plaintiff's state law causes of action are preempted under section 301 of the Copyright Act, vesting this Court with jurisdiction over the matter. Plaintiff's petition refers, albeit vaguely, to rights arising from the "music" of the Dukes produced between 1946–1974. The vagueness may be attributed to plaintiff's contentions that it only

contemplated state law breach of duty theories, not copyright infringement, when drafting the petition. Nevertheless, to effectuate a proper preemption analysis, this Court has to determine, as a threshold matter, whether plaintiff's allegations involve a protected subject matter under the Act.

It is evident that plaintiff's claims potentially involve two different, overlapping classes of original works of authorship that fall under the subject matter of the Act: sound recordings and musical works (including compilations and derivative works under § 103). 17 U.S.C. § 102(7) and 17 U.S.C. § 102(2). Based on the temporal posture of this suit, each should be governed by a separate provision of section 301 of the Copyright Act, 17 U.S.C. § 301, which governs preemption of state law causes of action.

The first, and much clearer, preemption issue concerns the status of sound recordings. Plaintiff's petition alleged that the Dukes made several studio and live recordings between the band's formation and Frank's death in 1974. In a subsequent affidavit submitted to the Court, plaintiff has averred that upon further investigation of the matter, all recordings were actually made prior to 1972.

Section 301(c) of the Act provides that "[w]ith respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes shall not be annulled or limited by this title until February 15, 2067." 17 U.S.C. § 301(c). To the extent that plaintiff seeks relief for pre–1972 sound recordings, there is no preemption as a matter of law. However, there is no such limitation governing musical works, derivative works, and compilations. Therefore, a preemption analysis for those works of authorship must be carried out pursuant to the general preemption provision, 17 U.S.C. § 301(a).

The United States Court of Appeals for the Fifth Circuit has developed a two-part

test for analyzing preemption claims under § 301(a) of the Copyright Act. "First, the cause of action is examined to determine if it falls "within the subject matter of copyright," Second, the cause of action is examined to determine if it protects rights that are "equivalent" to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Computer Management Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000); *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir.1995).

Since Asunto's claims are based on the defendants payment and collection of royalties for musical works, a subject matter undoubtedly covered by the Act, the Court's analysis will focus on whether the causes of action asserted by Asunto are "equivalent" to any of the exclusive rights provided for in the Copyright Act. Before moving on to the specific equivalency determinations of plaintiff's claims it is necessary to briefly set forth the cause of action provided for by the Act, copyright infringement.

■■ The prototypical case under the Copyright Act is the infringement claim. 12 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.01[A], at 12–6 (1999). In order to prove copyright infringement, a plaintiff must prove two elements, (1) ownership of the copyrighted material, and (2) copying by the defendant. *Computer Management Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir.2000). Therefore, if the plaintiff's state law causes of action involve the ownership of subject matter potentially appropriate for protection under the Act and copying by the defendant, with nothing more, then the claims are preempted. In other words, "[a] right is equivalent if the mere act of reproduction, distribution or display infringes it." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir.1990).

■ The test in the Fifth Circuit for evaluating the equivalency of rights is commonly referred to as the "extra element" test. *Computer Management Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir.2000);

> According to this test, if the act or acts of [the defendant] about which [the plaintiff] complains would violate both [state law] and copyright law, then the state right is deemed "equivalent to copyright." If, however, one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie "within the general scope of copyright," and preemption does not occur.

*Id.* (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 (5th Cir.1999))(quoting 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B][1], at 1–13 (1998)); *See e.g., Daboub v. Gibbons*, 42 F.3d 285, 289–90 (5th Cir.1995). It is therefore appropriate to examine each of the causes of action asserted in plaintiff's petition to determine whether or not a qualitatively different element is required distinguishing the state law claim from a cause of action under the Copyright Act.

**(1) Accounting**

■ An accounting and determination of ownership rights are matters of state law and should not be preempted. *See Dead Kennedys v. Biafra*, 37 F.Supp.2d 1151, 1154 (N.D.Cal.1999). Plaintiff asserts that defendants owe an accounting for all royalties paid in connection with any music or live performance of the Dukes of Dixieland. If plaintiff is able to establish the existence of enforceable recording and distribution contracts, then an accounting can be ordered by a state court without reference to the Copyright Act. *See Baptiste v. Khoury*, 910 F.Supp. 277, 279 (W.D.La.1996). To put it another way, since plaintiff's accounting claim relies upon the disposition of his substantive state law causes of action it should not be preempted. *See Lattie v. Murdach*, 1997 WL 33803, at *6 (N.D.Cal.1997).

**(2) Breach of Contractual and Fiduciary Duties**

 "[A]n author's right to royalties under a publication contract may be conditioned upon the publisher's acts of reproduction and distribution of copies of the work, but there is another crucial act that stands as a condition to the publisher's liability: the publisher's promise to pay a stated royalty." 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B][1], at 1–15 (2000). Thus, the promise that is implicit in every contract, but is not necessary in an infringement action provides the extra element that precludes pre-emption under § 301. *Id.*

This circuit has consistently recognized that a legitimate breach of contract allegation serves to defeat preemption. *See Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir.1990); *Crooks v. Certified Computer Consultants, Inc.*, 92 F.Supp.2d 582, 587 (W.D.La.2000); *Baptiste v. Khoury*, 910 F.Supp. 277, 279 (W.D.La.1996). Similarly, the Fifth Circuit has stated that a claim for breach of fiduciary duty is qualitatively different from a copyright infringement claim. *Daboub v. Gibbons*, 42 F.3d 285, 289–90 (5th Cir.1995).

Plaintiff's petition alleges that "Frank Asunto . . . collected royalties from recording and distribution contracts . . ." (petition ¶ 6). Count 2 of the petition claims that the Recording and Distribution Defendants owed plaintiff contractual and fiduciary duties with the payment of royalties and states that to the extent that the accounting shows payments to persons other than plaintiff, the Recording and Distribution Defendants have breached their duties and agreements. Accordingly, plaintiff prays for damages for breach of contractual and fiduciary duty. The defendant claims that plaintiff has not alleged or proved evidence of a specific contract. Such a contention does not alter the characterization of the cause of action. Plaintiff expressly alleges the existence and possible breach of contractual and fi-

duciary duties. The existence of a promise or fiduciary duty renders plaintiff's claims qualitatively different from a copyright infringement claim, and thus cannot be preempted.

**(3) Conversion**

 Generally, "[t]he torts of conversion and trespass relate to interference with tangible rather than intangible property, and hence, should be held to be immune from pre-emption". 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B][1], at 1–41 (2000). However, a claim for conversion will be preempted when the theory of recovery merely asserts the wrongful copying, distribution and performance of an interest protected under the Copyright Act. *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir.1995). In order to avoid a finding of equivalency, there must be some evidence that the plaintiff was deprived physically of its property. *See Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir.1990).

Plaintiff alleges that the defendants have "wrongfully converted monies due and owing the plaintiff." (petition ¶ 19). Plaintiff plead the conversion of a tangible, money, rather than an intangible, such as a copyright. Simply put, plaintiff "alleges a conversion of royalties and not the works themselves." *Dead Kennedys*, 37 F.Supp.2d at 1154. In paragraph 6 of his petition, plaintiff asserts that the royalties, or monies, were originally collected in accordance with recording and distribution contracts. Therefore, plaintiff's allegation in Count 3 should not be preempted for two reasons. First, the object of the conversion is a tangible and thus qualitatively different from the object of a copyright infringement claim, a copyright, which is an intangible. Second, plaintiff's petition refers to distributions and collections made in violation of the recording and distribution contracts under which John Shoup collected royalty payments. The alleged acts of conversion were unlawful precisely

because the alleged payments were made in derogation of plaintiff's putative contract rights. Thus, the existence of the contractual promise to pay royalties provides an extra element against preemption.

#### (4) Unjust Enrichment

 Claims for unjust enrichment usually are held to be pre-empted by the Copyright Act. *See* 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B][1], at 1–38 (2000). Preemption is appropriate in the majority of instances because the typical unjust enrichment claim is qualitatively equivalent to a cause of action for copyright infringement. However, the case before this Court presents a different situation. Here, the core of plaintiff's claims arise from breaches of contractual and fiduciary duties among the parties. As such, it is evident that plaintiff's claim for unjust enrichment is "in reality a further explanation of the damages that [plaintiff] intends to prove arising from the breach of contract", which has been held sufficiently unique to survive the extra element test. *See National Car Rental System, Inc. v. Computer Assoc. Int., Inc.,* 991 F.2d 426, 434–35 (8th Cir. 1993). Moreover, plaintiff has maintained that his damages were caused by breaches of fiduciary duties owed by defendant. Specifically, plaintiff claims that John Shoup at one time acted in a limited fashion as mandatary for the plaintiff, and thereafter allegedly exceeded that authority to claim entitlement to royalties presumably due to Frank Asunto's estate. This critical element of a fiduciary relationship renders the unjust enrichment claim qualitatively different from an infringement claim, and is therefore not preempted. *See generally Wrench LLC v. Taco Bell Corp.,* 1998 WL 480871 at *6 (W.D.Mich.1998).

#### (5) Declaratory and Injunctive Relief

 Plaintiff also requested declaratory and injunctive relief declaring that the Estate of Asunto and his lawful heirs are entitled to all rights and ownership associated with the Dukes music produced between 1946 and 1974. Reading the petition as a whole, it is clear that the controlling purpose of the petition is to determine a breach of contract and that there should be no preemption of the request for declaratory relief. *See* 12 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.01[B], at 12–20 to 12–22 (1999). The requested relief springs from the recording and distribution contracts that allegedly existed among Frank Asunto and the various defendants. Once again, the resolution of the contract and fiduciary duties question will dictate the resolution of the equitable remedies sought. As the requested relief is dependant upon the resolution of the contract issue, it falls under state court jurisdiction. *See Baptiste v. Khoury,* 910 F.Supp. 277, 279 (W.D.La.1996); *Dead Kennedys v. Biafra,* 37 F.Supp.2d at 1154.

### Artful Pleading Doctrine

 Defendant also claims that the Copyright Act completely preempts the state law claims asserted by plaintiff and triggers the artful pleading doctrine. The complete preemption doctrine is a well recognized exception to the well-pleaded complaint rule. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Crooks v. Certified Computer Consultants, Inc.,* 92 F.Supp.2d 582 (W.D.La.2000). Under the complete preemption doctrine "a narrow class of claims are so "necessarily federal" that they always will permit removal to federal court, even if they are raised only by way of defense." 12 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3722.1, pp 508–513 (1998). However, because of the existence of section 301 of the Copyright Act (the preemption provision), the court can apply that provision of the statute and not become embroiled in traditional preemption tests. 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B], at 1–8 (2000). As stated

earlier, the effect of § 301 of the Copyright Act is that not every case that potentially involves copyright laws is preempted. "[A] state law claim will not be preempted if an "extra element" exists that changes the nature of the action such that it is qualitatively different from a copyright infringement claim." *Crooks v. Certified Computer Consultants,* 92 F.Supp.2d 582, 586 (W.D.La.2000). As the Court has found that plaintiff's claims arise solely under state law and that there is no copyright preemption, defendant's artful pleading argument also fails. *See Crooks v. Certified Computer Consultants,* 92 F.Supp.2d 582, 587 (W.D.La.2000); 12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.01[B], at 12–14 to 12–22 (1999).

### Federal Copyright Jurisdiction

 Finally, defendant claims that this court should retain jurisdiction of this matter because it arises under the original jurisdiction of this Court. It is well established that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights ... Such jurisdiction shall be exclusive of the courts of the states in ... copyright cases." 28 U.S.C. § 1338(a). *See also Goodman v. Lee,* 815 F.2d 1030, 1031 (5th Cir.1987). Judge Friendly's interpretation of this statute is found in the seminal case *T.B. Harms v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965) and has been relied on by the Fifth Circuit. The test states that

> An action arises under the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control disposition of the claim.

*Goodman,* 815 F.2d at 1031; *Baptiste v. Khoury,* 910 F.Supp. at 279.

The Court's preemption analysis, *supra,* has thoroughly evaluated the causes of action asserted by plaintiff and is convinced that the complaint is not one for copyright infringement. Therefore the first method of obtaining jurisdiction under *T.B. Harms* and *Goodman* is not available. Also as stated earlier, the Court is convinced that the claims asserted in plaintiff's petition revolve around, and depend upon, state law issues of contract, fiduciary duty and mandate. Such issues do not require a construction of the Copyright Act. Finally, the Court does not see where a distinctive policy of the Copyright Act requires that federal principles control the claim. As all three methods of obtaining original copyright jurisdiction are lacking, the Court finds that it has no jurisdiction over plaintiff's claim.

### Procedural Defects in the Removal

 The Fifth Circuit has held that "[t]he law is clear that under 28 U.S.C. § 1446, removal procedure requires that all defendants join in the removal petition." *Doe v. Kerwood,* 969 F.2d 165, 167 (5th Cir.1992)(citing *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Assistants' Local 349,* 427 F.2d 325 (5th Cir.1970)). "The rule applies to all forms of defendants—... over whom the state court has acquire jurisdiction as of the time of removal." 14C Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3731, pp. 258–265 (1998). However, "defendants who are not served may be ignored, both for jurisdictional purposes and for the purpose of requiring their joinder in the notice of removal." *Id.* at 274; *See also Miranti v. Lee,* 3 F.3d 925, 929 (5th Cir.1993).

Plaintiff alleges that Happy Hour Music received service via certified mail. He also claims that Happy Hour refused to accept service, and therefore would be considered properly served under Louisiana law. *See Hardy v. Dowe Co., Inc.,* 674 So.2d 452 (La.App. 4 Cir.1996). Defendant argues that plaintiff's evidence consists

only of a blank return receipt card and an envelope indicating refusal by an unidentified person. Additionally, defendant states that the current telephone directory listings indicate that neither Happy Hour nor its listed agent for service of process resides at the address where long-arm service was mailed. Due to the conflicting evidence presented in the parties motions, the Court can not rule on the validity of plaintiff's argument without more definitive proof of refusal of service. Therefore, the Court cannot find that defendant's failure to join Happy Hour Music is a fatal defect in its removal.

This Court finds plaintiff's causes of action are not preempted under § 301 of the Copyright Act and that there is no federal question jurisdiction over this suit under 28 U.S.C. § 1338(a), therefore this Court lacks subject matter jurisdiction. Accordingly,

**IT IS ORDERED** that, pursuant to 28 U.S.C. § 1447(c) plaintiff's Motion to Remand (doc. # 3) is **GRANTED** and this matter is **REMANDED** to the Civil District Court for the Parish of Orleans.