Alan D. Rosenthal, Louis K. Bonham, Houston, TX, for Plaintiff.

Sean R. D. Gorman, Nathan Sommers, et al., Houston, TX, for Defendants.

**KING EMPIRE, INC., Plaintiff,**

v.

**MILAN COURTYARD HOMES, LTD.,** International Investors Group, Inc., IIG Investment Developers, Inc., IIG Partnership Management XIV, Inc., Joseph L. Watson, Mark Swenson, d/b/a Signature Group Architects, and Corinthian Custom Homes, Inc., Defendants.

No. Civ.A. H–00–3483.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 6, 2001.

## ORDER

HITTNER, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment. Having considered the motion, submissions, and applicable law, the Court determines that the motion should be granted in part and denied in part. The motion is granted in part as to the issue of statute of limitations and denied as to the issue of an implied license.

## I. INTRODUCTION

This is a copyright infringement suit. Plaintiff King Empire, Inc. ("King Em-

pire") is an architectural design firm. In 1995, Kenneth W. King ("King"), president of King Empire, agreed to provide architectural drawings for a development of courtyard homes in a gated community known as Milan Place and/or Yorktown Place in Houston, Texas. King was acting on behalf of King Empire in his dealings with Defendants. King prepared various drawings to be used in the construction of Milan Place and delivered them to Defendants. In the course of working together on the project, a disagreement developed; in November of 1995, the parties terminated their working relationship. Defendants subsequently retained other architects to complete the project. In December 1995 and January 1996, the parties engaged in negotiations pertaining to the granting of a license by King Empire to Defendants for use of the architectural drawings; however, no agreement was reached. Forty homes were later constructed based on the completed architectural drawings. King Empire filed this action in October 2000, claiming that the Defendants' construction and sale of houses based on King's architectural works and technical drawings constituted misappropriation of King Empire's intellectual property.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of demonstrating to the court that there is an absence of a genuine issue of any material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the party who bears the burden of proof on the claims on which summary judgment is sought to present evidence beyond the pleadings to show there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *E.g., Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 713 (5th Cir.1994).

## III. ANALYSIS AND LAW

Defendants Milan Courtyard Homes, Ltd., International Investors Group, Inc., IIG Investment Developers, Inc., IIG Partnership Management XIV, Inc., Joseph L. Watson, and Corinthian Homes, Inc. filed the instant motion for summary judgment on the basis that King Empire's claims for copyright infringement are barred by limitations and by an irrevocable non-exclusive implied copyright license.

### Statute of Limitations

Defendants assert that King Empire's claims for copyright infringement accrued more than three years prior to the filing of the lawsuit. According to Defendants, King Empire admits that by the summer of 1996 it had enough knowledge to believe it had a cause of action against the Defendants, but it failed to file suit until October 5, 2000, more than one year after the limitations period had expired. Defendants further assert that copyright infringement is not a continuing tort in this

jurisdiction and that, therefore, King Empire's claims are barred by limitations.

Pursuant to section 507(b) of the Copyright Act, civil infringement actions are governed by a three-year statute of limitations. 17 U.S.C. § 507(b) (1994) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). Defendants contend that King Empire's infringement claim is barred by the three-year limitations period set forth in 17 U.S.C. § 507(b) because King Empire learned of its cause of action and had knowledge of the infringing acts (if there were any) no later than September 30, 1996, but failed to file suit until October 5, 2000, more than four years later and over a year after the statute of limitations expired.

Defendants argue that King Empire knew of its cause of action because (1) King knew that the drawings he had produced were to be used by new architects to complete the project, (2) King was informed by letter dated November 13, 1995, that Defendants were engaged in conversations with new architects "relating to picking up where [King] left off," (3) King admits that he spoke with the new architect, that he knew the new architect received the drawings for the Milan Place Project, and that the new architect was asked to complete the design work, and (4) King acknowledges that by April 23, 1996, he knew the drawings he had provided to Defendants were being used by the new architect to complete the project. Defendants state that King Empire's claims for copyright infringement accrued no later

than September 30, 1996, in part due to King's observation of homes at Milan Place that appeared to be based on his designs, and because he instructed his attorney to file suit against the Defendants for copyright infringement.

King Empire asks the Court to follow *Makedwde Publishing Co. v. Johnson*, 37 F.3d 180 (1994), for its finding that after the claim initially accrues, the statute bars recovery for any infringing acts occurring more than three years before the commencement of the action, but that a defendant is liable for acts of infringement committed within three years prior to a plaintiff's lawsuit. King Empire admits that some of the houses at issue[1] were sold prior to October 6, 1997—in other words, more than three years before King Empire filed suit. However, a number of homes in the Milan Place development were sold after October 6, 1997—within the limitations period as set forth in *Makedwde*.

The Court must consider not only *Makedwde* but also *Daboub v. Gibbons*, 42 F.3d 285 (5th Cir.1995). Both cases dealt with infringement of copyrights for songs. *Makedwde* and *Daboub* are alike in that they both reject the continuing tort theory developed by the Seventh Circuit in *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir.1983).[2] Yet, the application of the rule in each to the instant case would result in contrary determinations on the statute of limitations issue.

In *Taylor*, the Seventh Circuit applied a continuing tort theory in which an initial copying by a defendant is not a separate or

---

**1.** King Empire asserts that because the statutory definition of "an architectural work" in 17 U.S.C. § 101 includes actual structures, the sale of a house that is an unauthorized copy of, or a derivative of, a copyrighted architectural work is an act of copyright infringement.

**2.** *Makedwde* rejects the Seventh Circuit's view explicitly; *Daboub* rejects the concept but without discussion of *Taylor* or the split in the U.S. circuit courts.

completed wrong, but instead is the first step in a course of conduct which continues until the final infringing copy is sold. *Taylor*, 712 F.2d at 1119. Under a continuing tort theory of infringement, the statute of limitations does not *begin* to accrue until the *last* act of infringement has occurred. *See id.*

The continuing tort theory espoused in *Taylor* takes a broad view of infringement to include the defendant's actions outside the limitations period that continue to cause harm to the plaintiff. *See Makedwde*, 37 F.3d at 182. In *Taylor*, the defendant ceased selling maps but had become a party to the infringement because his dealers continued to sell maps until the time the suit was filed. *Taylor*, 712 F.2d at 1119. The court viewed the defendant's conduct not as a separate and completed wrong, but as the first step in a course of wrongful conduct that continued until the last copy of the infringing map was sold. *Id.* The court noted that the defendant knew he had copied and sold infringing maps and that his failure to take action to prevent the sale of those maps to consumers made him a party to the dealer's infringements. *Id.*

In October 1994, the Fifth Circuit in *Makedwde* rejected *Taylor's* continuing tort theory and followed the Second and Sixth Circuits in finding that a plaintiff may recover damages for acts occurring within the three years preceding the filing of the copyright infringement lawsuit. *See Hoste v. Radio Corp. of America*, 654 F.2d 11, 11 (6th Cir.1981) (interpreting section 507(b) as barring recovery of any claims for damages which accrued over three years prior to the lawsuit); *Stone v.*

*Williams* 970 F.2d 1043, 1049–50 (2nd Cir.1992) (stating that "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief" and concluding that recovery is allowed for acts occurring within three years of suit, but disallowed for earlier violations).[3] In *Makedwde*, assignees of rights in a copyrighted song called *"Carnival Time "* sued Jones, the former president of the corporation that had arranged for the song to be sung by others. *Makedwde*, 37 F.3d at 180–181. Jones had not been involved with the corporation for six years and filed a motion to dismiss based on the three-year statute of limitations. *Id.* The district court applied the continuing tort theory and denied summary judgment. *Id.* at 181. The Fifth Circuit reversed, holding that "Jones is only liable for *his* acts of infringement committed within three years prior to Plaintiff's lawsuit" (of which there were none). *Id.* at 182.

In January of the following year, the Fifth Circuit decided *Daboub*, in which plaintiffs, members of the band the Nightcaps, claimed that ZZ Top's song *"Thunderbird "* had been copied from the plaintiffs' earlier release. *Daboub*, 42 F.3d at 287. Plaintiffs recorded and released *Thunderbird* in the 1950s as a single and on an album but failed to secure a copyright. *Id.* at 287. ZZ Top recorded and released its version of the song in 1975 and obtained a copyright.[4] The Nightcaps filed suit against ZZ Top in 1992, arguing that ZZ Top's actions amounted to a continuing tort—and, therefore, the statute of limitations had not begun to run. *Id.* at 290. The Fifth Circuit noted that "[t]he continuing tort theory has been rejected or not even mentioned in cases involving simi-

---

3. The *Stone* approach was followed by the Ninth Circuit in *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir.1994).

4. ZZ Top conceded for purposes of the appeal that its version of *Thunderbird* was musically and lyrically identical to the version written and performed by the Nightcaps. *Daboub*, 42 F.3d at 287.

lar situations to the case at hand," but it failed to cite *Makedwde*. *Id.* at 290–91. The *Daboub* court characterized the Nightcaps' argument in terms of continuing damages rather than a continuing tort: "Each time ZZ Top sells a single of *Thunderbird,* the Nightcaps' damages may increase, but the tort was committed when ZZ Top copyrighted the song." *Id.* at 291. The *Daboub* court thus concluded that the infringement action was barred by limitations. *Id.*

Application of *Makedwde* allows Plaintiffs to recover for infringing acts occurring within the three years before the commencement of the action. *See Makedwde,* 37 F.3d at 182. However, Defendants argue that under *Daboub,* the limitation period runs from the date of notice of the infringement and that repeated acts of the same infringement do not create separate bases of liability and recovery. Defendants assert that *Daboub* "implicitly overruled *Makedwde* to the extent any liability could be predicated on acts occurring within three years prior to suit." To that end, this Court is faced with conflicting rulings from two Fifth Circuit decisions.

It is well established that one Fifth Circuit panel cannot overrule the decision of another panel; panel decisions may be overruled only by the Fifth Circuit sitting *en banc* or by a subsequent decision of the Supreme Court. *E.g., Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997); *Grabowski v. Jackson County Public Defenders Office,* 47 F.3d 1386, 1400 n. 4 (5th Cir.1995) (J. Smith, concurring in part and dissenting in part); *FDIC v. Dawson,* 4 F.3d 1303, 1307 (5th Cir. 1993); *Burlington N.R.R. v. Brotherhood of Maintenance of Way Employees,* 961 F.2d 86, 89 (5th Cir.1992); *Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 465 (5th Cir.1991).

The rule that one panel cannot overrule another panel is usually cited in the context of a discussion in which a party asks the court to "reexamine" an earlier Fifth Circuit decision or when a later panel is in disagreement with an earlier decision.[5] However, it does not appear that the differing results in *Makedwde* and *Daboub* as to appropriate application of the limitations period are due to disagreement between the panels or even contrary interpretation of the applicable precedent.[6] *Daboub* was decided less than three months after *Makedwde.* Although the court in *Daboub* discussed and rejected the continuing tort theory, it did so without analysis of *Makedwde,* the seminal cases in

---

**5.** See, for example, Judge Smith's discussion in his dissenting opinion in *United States v. McPhail,* 119 F.3d 326, 327 (5th Cir.1997): "We have long abided by the rule that one panel may not overrule another, even when the later panel disagrees with the earlier one's holding." This is necessary, for [a] "purpose of institutional orderliness" is served by "our insistence that, in the absence of intervening Supreme Court precedent, one panel cannot overturn another panel, regardless of how wrong the earlier panel decision may seem to be." "So, when a later panel decision contradicts an earlier one, the earlier one remains binding circuit law. The point is that a panel cannot overrule, nullify, or implicitly disavow a prior panel's interpretation of circuit law, even if it appears wildly flawed. The proper mechanism for such change is action by the en banc court, the Supreme Court, or, in an appropriate case, Congress. When a panel, presumably through inadvertence, nonetheless fails to follow prior decisions, we have customarily corrected the error through en banc review, to avoid inconsistencies in our circuit law."

**6.** One commentator has hypothesized that the *Daboub* court was "perhaps oblivious to the fact that the court was simultaneously considering the exact same issue in *Makedwde.*" R. Daryl Burke, *Fifth Circuit Survey: June 1994– May 1995: Intellectual Property,* 27 Tex. Tech L.Rev. 859, 867 (1996).

this area, or the split among the circuits. Judge Smith of the Fifth Circuit has said:

> [O]ur rule of orderliness comes into play when two panels become "ships passing in the night." A subsequent panel may be unaware of an earlier holding and, consequently, may reach a contrary result. No *interpretation* is involved, as the later panel makes no mention of the earlier case. In such an instance, we can easily say that the later opinion is a nullity; any other rule would invite judicial chaos.

*Grabowski v. Jackson County Public Defenders Office,* 47 F.3d 1386, 1400 n. 4 (5th Cir.1995) (J. Smith, concurring in part and dissenting in part).

In light of the foregoing, *Makedwde* is the controlling precedent before the Court. Defendants are liable for acts of infringement, if any, committed within the three-year period prior to the filing of this lawsuit. Defendants' motion for summary judgment on grounds of limitations is granted in part and denied in part, in that recovery is barred by the statute of limitations for acts of infringement occurring prior to October 5, 1997.

The Court further finds that fact issues exist as to the issue of an implied license. Defendants' motion for summary judgment on this ground is therefore denied. Accordingly, the Court hereby

ORDERS that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. King Empire's copyright infringement claims for acts that occurred prior to October 5, 1997, are hereby DISMISSED. All relief not expressly granted herein is denied.